125 A.3d 394

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Jacob Matthew CHRISTINE, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 9, 2014.

Decided Oct. 27, 2015.

390

392

Michael Wiseman, Esq., Philadelphia, Law Office of Michael Wiseman, for Jacob Matthew Christine.

Rebecca J. Kulik, Esq., John Michael Morganelli, Esq., Patricia Fuentes Mulqueen, Esq., Northampton County District Attorney's Office, for Commonwealth of Pennsylvania.

CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, STEVENS, JJ.

## OPINION

Justice EAKIN.

An equally divided *en banc* panel of the Superior Court[1] resulted in affirmance of appellant's judgment of sentence for aggravated assault, 18 Pa.C.S. § 2702(a)(1), and recklessly

---

1. Then–President Judge Stevens did not participate in the consideration or decision of the *en banc* decision below.

endangering another person (REAP), *id.*, § 2705.[2] The trial court summarized the facts:

> The convictions resulted from an incident that occurred in Northampton County Prison (NCP) on June 8, 2009. On that date, [appellant] and the victim, Thomas Mis[s]ero, were inmates in NCP when a confrontation between the two men occurred in [appellant]'s cell in Unit B–2. The cell housed 8 inmates in four rows of bunk beds. While in [appellant]'s cell, [appellant] was alleged to have slashed Mr. Mis[s]ero's neck and ear with a razor blade. Immediately after the attack, corrections officers searched [appellant]'s cell. Only one weapon, a shank, was found in the cell.[3] It was hidden within [appellant]'s bed.

Trial Court Opinion, 4/26/11, at 1–2.

Appellant filed a motion *in limine* to exclude the shank from evidence, arguing it was irrelevant and would cause undue prejudice by confusing the jury, because the Commonwealth agreed the shank was not used in the attack. N.T. Trial, 10/5/10, at 13. The trial court ruled the shank admissible under multiple theories. The court first stated the shank was admissible under the similar-weapon exception[4] because it showed appellant had "access to a weapon and that he had the ability to fashion a homemade weapon from objects in the prison." Trial Court Opinion, 4/26/11, at 7; *see also id.*, at 6–7

---

**2.** Appellant was found not guilty of attempted murder, *id.*, §§ 901(a), 2502(a).

**3.** The "shank" was an 18– to 20–inch rod from a metal bookshelf, "with a sharp point and a handle wrapped around it, which is a piece of cloth wrapped real tight so they can have a grip on it." N.T. Trial, 10/6/10, at 38. The Commonwealth conceded the shank was not used in the attack. *See, e.g.*, N.T. Trial, 10/5/10, at 13 ("[The shank] was not the weapon used in this incident.... We believe a razorblade was used, no razorblade was found. Right after the incident they searched the [appellant]'s cell, what they found was a shank. The Commonwealth intends to introduce the shank even though we do not believe that that is the instrument that was used.").

**4.** The similar-weapon exception, discussed *infra*, permits the introduction of a weapon not "specifically linked" to the crime if the Commonwealth "lay[s] a foundation that would justify an inference by the finder of fact of the likelihood that the weapon was used in the commission of the crime." *Commonwealth v. Lee*, 541 Pa. 260, 662 A.2d 645, 652 (1995) (citation omitted).

(discussing similar-weapon exception). Additionally, the court found the shank was relevant because it "tend[ed] to show [appellant] had knowledge and familiarity with prison-made weapons and could conceal them in his prison cell ... [and] to rebut [appellant]'s assertion that he was unarmed and acted in self-defense." *Id.,* at 8. The court found the shank's probative value outweighed its prejudicial effect and, therefore, admitted it into evidence. *Id.*

Appellant filed another pre-trial motion seeking to admit into evidence Missero's post-attack simple-assault conviction,[5] He argued Missero's conviction was relevant to his self-defense claim because the conviction demonstrated Missero's violent propensities and that he was the initial aggressor. The trial court denied the motion because, as the events leading to Missero's simple-assault conviction occurred after the jailhouse attack, "nothing about the timing or nature of the charges [ ]could establish Mis[s]ero's reputation for violence at the time of the [attack]." *Id.,* at 11–12.

At trial, appellant testified he was reading on his cot when one of his cellmates invited Missero inside. N.T. Trial, 10/6/10, at 44–45. Appellant stated the cellmate and Missero argued about a debt, and the conversation escalated and became confrontational; appellant tried to leave the cell, but Missero was standing in the doorway. *Id.,* at 45. Appellant testified Missero threw a cup of hot coffee at him and a struggle ensued, during which punches were exchanged. Missero produced a razorblade; appellant stated he disarmed Missero, retrieved the razorblade, and accidently may have cut

5. Almost 11 months after the attack, Missero, who was released from prison, was arrested for domestic violence. The prosecutor summarized the incident as follows:

[On] May 1st of 2010, Nazareth Police were called to the American Hotel in Nazareth for a report of an assault. Thomas Missero was outside and his girlfriend was there, Melissa Miller. She claimed that [Missero] had grabbed her and had pushed her. She had minor damage to her ear as a result of falling, I guess, from the push, and that he had threatened her.

N.T. Trial, 10/5/10, at 27. On June 24, 2010, Missero pled guilty to simple assault and REAP. Trial Court Opinion, 4/26/11, at 11.

Missero as he left the cell. *Id.,* at 46, 49. The razorblade was never found.

A jury convicted appellant of aggravated assault and REAP. The trial court sentenced appellant to nine to 20 years imprisonment for aggravated assault and a concurrent one- to two-year sentence for REAP, the entire sentence running consecutive to his current sentence.

Appellant appealed, and a divided three-judge panel of the Superior Court reversed, holding the shank was properly admitted but finding error in refusing to allow appellant to question Missero about his post-attack conviction for simple assault. *Commonwealth v. Christine,* No. 1893 EDA 2011, unpublished memorandum at 6, 10 (Pa.Super. filed April 24, 2012) (withdrawn). The Superior Court granted the Commonwealth's application for reargument *en banc. See* Pa.R.A.P. 2543. On reargument, an equally divided *en banc* panel affirmed the trial court. *Commonwealth v. Christine,* 78 A.3d 1, 2 (Pa.Super.2013) *(en banc) (per curiam).* All eight judges agreed, albeit for different reasons, the trial court did not abuse its discretion by excluding the post-trial conviction.[6] The court was evenly divided regarding admissibility of the shank.

The OISA held that even though it was not used in the attack, the shank demonstrated appellant's familiarity with and ability to fashion a homemade weapon similar to the one used in the attack. The OISA noted the razorblade and the shank both had the "distinctive characteristic" of having

6. The Opinion in Support of Affirmance (OISA) reasoned Missero's subsequent conviction was inadmissible because that "offense is not 'similar in nature' to the events that [a]ppellant alleged transpired [during the attack]." *Id.,* at 5 (Mundy, J., OISA) (quoting *Commonwealth v. Mouzon,* 617 Pa. 527, 53 A.3d 738, 741 (2012)) (citing N.T. Trial, 10/6/10, at 45–47 (stating Missero threw hot cup of coffee on appellant and punched him multiple times)). The Opinion in Support of Reversal (OISR) opined "the only relevant time period for purposes of proving a victim's ... character is the time period up until the occurrence of the confrontation[,]" and therefore, "Missero's subsequent conviction for an event that transpired after the prison incident should not be used 'to *retroactively* establish [his] character' at the time of the incident." *Id.,* at 11–12 (Ott, J., OISR) (emphasis and alteration in original) (quoting Trial Court Opinion, 4/26/11, at 13).

" 'cloth or tape at the end of the instrument in order to have a handle on it.' " *Id.,* at 8 (Mundy, J., OISA) (citation omitted). The OISA reasoned that while a generic razorblade is not unique, "it is the *intentional and specific modification* of the razor and the bookcase's metal rod into makeshift weapons[ ] that makes both of them distinctive . . .[, and it tends to show appellant] 'had the ability to fashion a homemade weapon from objects in the prison.' " *Id.,* at 8–9 (emphasis in original) (citations omitted).

The OISR, citing *Commonwealth v. Robinson,* 554 Pa. 293, 721 A.2d 344 (1998), and *Commonwealth v. Marshall,* 743 A.2d 489 (Pa.Super.1999), believed the shank was irrelevant because "there was no dispute that [it] was not the weapon used in the fight[,] there was testimony . . . that razor blades were readily available to inmates at the prison[, and] the shank did not corroborate or rebut any testimony." *Christine,* at 13 (Ott, J., OISR). The OISR also disagreed that appellant's self-defense claim was rebutted by a different weapon having been found in his bed. *Id.,* at 13 & n. 6 (citing *Commonwealth v. Williams,* 58 A.3d 796, 801 (Pa.Super.2012)). Moreover, because the Commonwealth's case depended largely on credibility determinations, the OISR concluded the error was not harmless. *Id.,* at 15–16.

We granted allowance of appeal to determine:

(1) Is a conviction for assault, which occurs subsequent to the incident at issue in a criminal trial, admissible to prove the allegedly violent propensities of the victim, where self-defense is asserted and where there is an issue raised as to who was the aggressor?

(2) Did the [t]rial [c]ourt commit error of law or abuse its discretion when it permitted the Commonwealth to admit a "shank" as physical evidence, as well as testimony regarding said shank, in the course of the jury trial in the instant matter?

*Commonwealth v. Christine,* 624 Pa. 505, 86 A.3d 831 (2014) *(per curiam); see also* 42 Pa.C.S. § 724(a).

 Both issues concern the admissibility of evidence, which rests within the sound discretion of the trial court, and therefore, we "will reverse [the] trial court's decision ... only if the appellant sustains the 'heavy burden' to show that the trial court has abused its discretion." *Commonwealth v. Bryant*, 620 Pa. 218, 67 A.3d 716, 726 (2013) (citations omitted). The following principle leads to our affirmance of the trial court's rulings:

It is not sufficient to persuade the appellate court that it might have reached a different conclusion[;] it is necessary to show an actual abuse of the discretionary power. An abuse of discretion will not be found based on a mere error of judgment, but rather exists where the court has reached a conclusion [that] overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

*Id.* (alteration in original) (citation and internal quotation marks omitted).

 Only relevant evidence is admissible at trial. Pa. R.E. 402. Evidence is relevant if it tends to make a material fact more or less probable than it would be without the evidence. *Id.*, 401. Even if relevant, however, evidence may be excluded "if its probative value is outweighed by ... unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *Id.*, 403. Appellant's claim of inadvertent injury while exercising the right of self-defense is pertinent to both rulings. As to the first issue, when a defendant asserts a claim of self-defense:

[E]vidence of the victim's prior convictions involving aggression may be admitted, if probative, either (1) to corroborate the defendant's alleged knowledge of the victim's violent character, to prove that the defendant was in reasonable fear of danger, or (2) as character/propensity evidence, as indirect evidence that the victim was in fact the aggressor.

*Mouzon*, at 741 (citation omitted). The defendant need not have knowledge of the victim's prior conviction if it is being

offered to prove the victim was the aggressor. *Common-wealth v. Amos,* 445 Pa. 297, 284 A.2d 748, 752 (1971). Thus, evidence of the victim's prior conviction is admissible if the trial court determines it is "similar in nature and not too distant in time. . . ." *Mouzon,* at 741 (citation omitted).

■ Relying on *Commonwealth v. Beck,* 485 Pa. 475, 402 A.2d 1371 (1979),[7] appellant first argues the lower courts erred in looking to the facts behind the subsequent conviction to determine whether it was "similar in nature" to the jailhouse attack, as "an assault conviction necessarily implies violent propensity." Appellant's Brief, at 13. In regard to the not-too-distant-in-time element, appellant avers the fact that case law refers to a conviction preceding the present incident does not necessarily limit the admissibility of victim's convictions to prior convictions. *Id.,* at 15 ("Nowhere in either [*Beck* or *Amos* ] did this Court consider whether a conviction must occur before or after the incident on trial in order to be relevant to violent propensity."). He contends that because *Beck* and *Amos* were murder cases, where it was tautological-ly impossible for the victim to commit a subsequent offense, the prior-conviction language in those opinions is *dicta,* and thus, precedent does not bar subsequent convictions from being admissible. *Id.,* at 15–16. Therefore, according to appellant, the reasoning of those cases logically applies to subsequent convictions and the trial court erred by "categori-cally refusing" to admit any subsequent conviction. *See id.,* at 16–17. Finally, appellant submits the trial court's error was not harmless because "the only contested issue at trial was which party was the aggressor[.]" *Id.,* at 18.

The Commonwealth responds by arguing any conviction subsequent to the incident at issue can never be probative that the victim was the aggressor during a previous altercation. Commonwealth's Brief, at 8; *see also id.,* at 6–7 (stating no

7. In *Beck,* this Court held it was error for the trial court to exclude the victim's three-year-old prior convictions for assault and battery. We stated, "When the prior conviction is for assault and battery, there is no need to compare the facts. Any difference is irrelevant. A conviction for assault and battery necessarily implies a character involving aggres-sive propensities." *Id.,* at 1373.

case law supports "position that subsequent convictions of the victim may be admitted to show alleged violent propensities in a prior conflict" and noting this Court's precedent "specifically refers to *'prior* convictions' and *'past* crimes'" (emphasis in original) (quoting *Mouzon,* at 741)).[8] The Commonwealth asserts logic does not warrant extending the rule to subsequent convictions because "numerous intervening factors ... could have affected the victim's character and propensities going forward." *Id.,* at 8–9.

We hold the Superior Court did not err in determining the trial court acted within its discretion by excluding Missero's subsequent simple-assault conviction. The "decision in each case as to similar nature and remoteness ... rests within the sound discretion of the trial judge." *Amos,* at 752. While we disagree with appellant's position that the trial court abused its discretion, we do not endorse the claim that a subsequent conviction can *never* be probative and admissible. Proximity in time is a factor, as is similarity of facts. Here we have 11 months between events, but a strikingly disparate factual scenario.[9] *See Weakley,* at 1190 (stating, in context of using prior bad acts to identify defendant, "the importance of a temporal nexus between crimes declines as the similarity of the crimes increases"); *see also* N.T. Trial, 10/6/10, at 46 (appellant testifying Missero started fight by throwing hot cup of coffee). We uphold the ability of the trial court to duly consider all things appropriate, and find the court here did not abuse its discretion in excluding Missero's conviction. We

8. The Commonwealth argues, while there is a dearth of case law dealing with the admission of subsequent offenses "in any context ..., in those cases where courts have allowed [such] evidence ... to be admitted at trial, [it] has come in under the exceptions listed in [Pa.R.E.] 404(b)(2) and it has related to the defendant, not the victim." *Id.,* at 7–8 (citing *Commonwealth v. Reid,* 533 Pa. 508, 626 A.2d 118, 121 (1993); *Commonwealth v. Weakley,* 972 A.2d 1182, 1188 (Pa.Super.2009); *Commonwealth v. Wattley,* 880 A.2d 682, 686–87 (Pa.Super.2005)).

9. In this regard, we overrule *Beck* insofar as it stands for the bright-line rule that all assault convictions are sufficiently similar to demonstrate the victim's violent propensities. *See Beck,* at 1373. Instead, trial courts may determine whether the facts are sufficiently similar on a case-by-case basis, and the trial court here did not err in doing so.

"reaffirm our confidence in our trial judges to oversee the presentation of evidence 'so that overtly passionate, intentionally biased and inflammatory material is kept out of the courtroom.' " *Bryant,* at 726 (quoting *Commonwealth v. Eichinger,* 591 Pa. 1, 915 A.2d 1122, 1139 (2007)).

Appellant's second issue challenges the admission of the shank found hidden in his bed. Appellant first argues the trial court erred by ruling it admissible under the similar-weapon exception because the Commonwealth conceded the shank did not cause Missero's injuries. *See* Appellant's Brief, at 23 (quoting *Lee,* at 652). Instead, the Commonwealth contends the shank was admissible "to show that [a]ppellant 'had possession and control of a weapon similar to the one used to commit his crimes.' " Commonwealth's Brief, at 14 (quoting *Williams,* at 801).

A weapon not "specifically linked" to the crime is generally inadmissible; however, the fact "the accused had a weapon or implement suitable to the commission of the crime charged ... is always a proper ingredient of the case for the prosecution." *Robinson,* at 351 (alteration in original) (citation and internal quotation marks omitted). "Any uncertainty that the weapon is the actual weapon used in the crime goes to the weight of such evidence." *Commonwealth v. Williams,* 537 Pa. 1, 640 A.2d 1251, 1260 (1994) (citing *Commonwealth v. Coccioletti,* 493 Pa. 103, 425 A.2d 387, 390 (1981)). "The only burden on the prosecution is to lay a foundation that would justify an inference by the finder of fact of the likelihood that the weapon was used in the commission of the crime." *Lee,* at 652 (citing *Commonwealth v. Thomas,* 522 Pa. 256, 561 A.2d 699, 707 (1989) ("If a proper foundation is laid, the weapon is admissible where the circumstances raise an inference of the likelihood that it was used.")).

The cases cited deal with weapons that might have been used. Possession of a handgun may be relevant even if the particular gun possessed cannot be proven to be the one used in the crime. That it was possessed may allow the inference it could have been used. Here, however, the excep-

tion is not in play, as the shank was admittedly not used in the pertinent assault. The theory of the exception is that the weapon possessed could have been the weapon used—that simply is not the case here, and admission under the similar-weapon exception was error.[10] To the extent that cases affirm use of this exception strictly on the basis of similarity, without an inference they were the weapons used, we reject them.

Of course, admission on other grounds remains possible. In that regard, the trial court also found the shank relevant and admissible to demonstrate appellant's ability to fashion a homemade weapon, and to rebut his self-defense

10. This Court's entry into the similar-weapon exception was in *Commonwealth v. Ford*, 451 Pa. 81, 301 A.2d 856 (1973), where police believed a 12–inch knife found in the defendant's home was the murder weapon. The victims were stabbed with "a kitchen knife about 12 inches long," and the medical examiner testified the victims' "wounds were caused by a knife with a seven to seven and one-half inch blade." *Id.*, at 857. However, the knife at trial was never positively identified as the one used, and the medical examiner was unable to link it to the crime. *Id.* We held the knife was admissible because there was a foundation to "'justify an inference of the likelihood of [the knife] having been used....'" *Id.*, at 858 (quoting *United States v. Ramey*, 414 F.2d 792, 794 (5th Cir.1969) *(per curiam)).* *Accord Commonwealth v. Edwards*, 588 Pa. 151, 903 A.2d 1139, 1156–57 (2006) ("[T]he Commonwealth need only lay a foundation that would justify an inference by the finder of fact of the likelihood that the weapon was used in the commission of the crime." (citation omitted)); *Lee*, at 652 (same); *Thomas*, at 707 (same); *Commonwealth v. Yount*, 455 Pa. 303, 314 A.2d 242, 249 (1974) ("The knife [found on defendant and admitted at trial] was of a kind that *could have inflicted the wounds*, even though the prosecution was unable conclusively to demonstrate that the particular knife was the weapon used." (emphasis added)); *Commonwealth v. Johnson*, 419 Pa.Super. 625, 615 A.2d 1322, 1334 (1992) (citing *Commonwealth v. Fromal*, 392 Pa.Super. 100, 572 A.2d 711, 724 (1990)).

Unfortunately, some appellate decisions have omitted language referring to the need for a foundation justifying an inference the weapon was used in the crime. *See, e.g., Williams*, 640 A.2d at 1260 (stating weapon admissible "if it tends to prove that the defendant had a weapon similar to the one used in the perpetration of the crime"); *Williams*, 58 A.3d at 801 (stating similar-weapon exception applies "where 'the accused had a weapon or instrument suitable to the commission of the crime charged'"); *Commonwealth v. Owens*, 929 A.2d 1187, 1191 (Pa.Super.2007) (citation omitted). *But see Edwards*, at 1156–57 (citation omitted); *Lee*, at 652; *Thomas*, at 707; *Yount*, at 249; *Ford*, at 858; *Johnson*, at 1334 (citation omitted). This exception requires evidence sufficient to allow such an inference. It is not present herein.

claim. Noting razorblades are regularly handed out to inmates, appellant argues "it does not take much ingenuity to put a piece of paper, tape, or cloth on one end of the blade in order to hold it. [His] ability to do so was not at issue." Appellant's Brief, at 27. However, the Commonwealth laid a foundation of the similarity between the handles on the shank and razorblade, which, as admittedly generic that may be, the trial court found demonstrated appellant's familiarity with and ability to fashion jailhouse weapons, which one cannot say is irrelevant.

Appellant claims "the shank does not rebut his assertion of self-defense except by the improper inference of guilt arising from his alleged possession of an unrelated weapon." *Id.* Even if another judge would have ruled otherwise, it is " 'not sufficient to persuade the appellate court that it might have reached a different conclusion[;] it is necessary to show an actual abuse of the discretionary power.' " *Bryant,* at 726 (alteration in original) (citation omitted). We find the trial court's decision to admit the shank in order to rebut appellant's self-defense claim was not " 'manifestly unreasonable, or the result of partiality, prejudice, bias[,] or ill-will.' " *Id.* (citation omitted). Therefore, the trial court did not abuse its discretion or commit reversible error by admitting relevant evidence, and the OISA did not err by ruling the shank was relevant under alternative theories of admissibility.

Order affirmed; jurisdiction relinquished.

Former Chief Justice CASTILLE and Former Justice McCAFFERY did not participate in the decision of this case.

Justices BAER and STEVENS join the opinion.

Justice TODD files a concurring opinion.

Chief Justice SAYLOR files a dissenting opinion.

Justice TODD, concurring.

I join the majority in affirming the Superior Court's holding that the trial court did not abuse its discretion in admitting into evidence the shank found in Appellant's cell for the

purpose of rebutting Appellant's claim that he was unarmed and acted in self-defense. I also agree that the trial court properly denied Appellant's motion *in limine* to question the victim regarding his conviction for simple assault which occurred after his jailhouse altercation with Appellant; I write separately, however, because my reasoning on this second issue differs from that of the majority.

As noted by the majority, Appellant was charged with, *inter alia*, aggravated assault based on a jailhouse altercation involving the victim in June 2009, during which the victim allegedly threw hot coffee onto Appellant and punched Appellant several times. Appellant filed a pretrial motion seeking to introduce evidence that the victim was convicted of simple assault based on an incident of domestic violence between the victim and his girlfriend which occurred subsequent to the victim's release from prison, approximately 11 months after the jailhouse altercation involving Appellant. Appellant argued that the victim's simple assault conviction was relevant to Appellant's self-defense claim because it demonstrated the victim's violent propensities and suggested the victim was the initial aggressor.

In denying Appellant's motion to introduce evidence of the victim's simple assault conviction, the trial court first noted that, pursuant to Pa.R.E. 404(b)(1), evidence of other crimes generally is inadmissible to prove the character of a person in order to show conformity therewith. Trial Court Opinion, 4/26/11, at 12. The trial court acknowledged that this Court has held that a defendant who alleges self-defense may use a deceased victim's criminal record either to corroborate his alleged knowledge of the victim's quarrelsome and violent character to show the defendant reasonably believed his life was in danger; or to prove the allegedly violent propensities of the victim to show the victim was the aggressor. *See Commonwealth v. Amos*, 445 Pa. 297, 284 A.2d 748 (1971); *Commonwealth v. Beck*, 485 Pa. 475, 402 A.2d 1371 (1979). However, the trial court distinguished those cases on the basis that, unlike the present altercation, they involved a deceased victim. The trial court concluded that Appellant was attempt-

ing "to use future events to retroactively establish [the victim's] character," and opined:

the law only allows evidence of prior incidents to prove the character or reputation of the victim at the time of the crime in question. A subsequent conviction arising from events that transpired after the incident involving [Appellant] simply has no bearing on whether [the victim] possessed violent propensities on June 8, 2009.

*Id.* at 13.

On appeal, the Opinion in Support of Affirmance ("OISA") below recognized the principle expressed in *Amos* that a defendant alleging self-defense may use a deceased victim's criminal record to prove the alleged violent propensities of the victim to show that the victim was the aggressor, and further recognized that, to be admissible, the victim's crimes must be "similar in nature and not too distant in time" from the underlying incident. *Commonwealth v. Christine*, 78 A.3d 1, 5 (Pa.Super.2013) (OISA) (citing *Commonwealth v. Mouzon*, 617 Pa. 527, 53 A.3d 738, 741 (2012)). However, without acknowledging, as the trial court did, that *Amos* was distinguishable because the victim in the instant case is not deceased, the OISA concluded the trial court in the instant case properly excluded evidence of the victim's simple assault conviction because the offense was not "similar in nature" to the jailhouse altercation during which the victim threw hot coffee onto and punched Appellant. *Christine*, 78 A.3d at 5 (OISA).

Although the Opinion in Support of Reversal ("OISR") below also concluded the trial court properly precluded introduction of the victim's conviction for simple assault, it did so based on its belief that the victim's simple assault conviction did not show a propensity for violence on June 8, 2009, because the conduct underlying the conviction was then a future event. Thus, the OISR would have affirmed the trial court's ruling because the victim's "subsequent conviction for an event that transpired after the prison incident should not be used 'to retroactively establish [his] character' at the time of the incident." *Christine*, 78 A.3d at 11–12 (OISR) (citation omitted).

The majority concludes that "the Superior Court did not err in determining the trial court acted within its discretion by excluding [the victim's] subsequent simple-assault conviction," but declines to "endorse the claim that a subsequent conviction can **never** be probative and admissible." Majority Opinion at 399, 125 A.3d at 400 (emphasis original). The majority further opines: "Proximity in time is a factor, as is similarity of facts. Here we have 11 months between events, but a strikingly disparate factual scenario." *Id.* The majority proceeds to affirm the trial court based on this factual disparity.

While I agree with the majority that the Superior Court did not err in affirming the trial court's holding, I disagree with its premise. Indeed, there is no case law supporting introduction of evidence of a victim's **subsequent** conviction to demonstrate the victim's character for purposes of proving the victim was the aggressor. Both *Amos* and *Beck* involved evidence of a deceased victim's aggressive behavior which occurred prior to their fatal altercations, and this Court has continued to limit introduction of evidence of a victim's convictions to those which occurred **prior** to the incident in which the victim is alleged to have been the aggressor:

> [A]s an evidentiary matter, this Court has held that when self-defense is properly at issue, evidence of the victim's **prior** convictions involving aggression may be admitted, if probative, either (1) to corroborate the defendant's alleged knowledge of the victim's violent character, to prove that the defendant was in reasonable fear of danger, or (2) as character/propensity evidence, as indirect evidence that the victim was in fact the aggressor.

*Mouzon,* 53 A.3d at 741 (emphasis added).

Thus, I would hold that the trial court properly precluded Appellant from introducing evidence of the victim's **subsequent** simple assault conviction to support Appellant's claim of self-defense pursuant to Rule 404(b)(1), and would not engage in an analysis of whether the facts underlying the two altercations were sufficiently similar in nature.

Chief Justice SAYLOR, dissenting.

The majority relates that it "uphold[s] the ability of the trial court to duly consider all things appropriate" and finds that the trial court did not abuse its discretion in excluding Thomas Missero's conviction. Majority Opinion, at 399, 125 A.3d at 400. The difficulty with this position, however, is that the trial court simply did not consider all things appropriate or exercise any discretion whatsoever. Instead, that court implemented a bright-line rule of law—presently disapproved by the majority—permitting the admission of evidence only of "*prior* incidents to prove the character or reputation of the victim at the time of the crime in question." *Commonwealth v. Christine*, No. 3344–2009, *slip op.* at 13, 2011 WL 11513539 (C.P. Northampton Apr. 26, 2011) (emphasis added).

Given the majority's rejection of the *per se* evidentiary rule implemented by the trial court—and in the absence of any other supporting rationale deriving from that court's opinion—I fail to see how the court's decision, in any way, can be credited on its own terms or otherwise denominated as an appropriate exercise of discretion.

In light of the above, the majority's *de novo* evaluation of the overall circumstances presented to determine admissibility appears to represent a form of a *de facto* harmless-error assessment. In my view, however, Missero's conviction, entailing assaultive behavior within eleven months of the events giving rise to Appellant's judgment of sentence, is sufficiently probative of violent propensities that the trial court had the discretionary latitude to admit the evidence. *See generally* Pa.R.E. 405(b) (sanctioning the admission of evidence of specific instances of conduct to prove a character trait of an alleged victim where evidence of such trait is otherwise admissible per the applicable rule).

In effectively holding to the contrary, the majority not only undertakes to disapprove a salient *per se* facet of a previous decision of this Court by way of a footnote, *see* Majority Opinion, at 399 n. 9, 125 A.3d at 400 n. 9 (overturning an aspect of *Commonwealth v. Beck*, 485 Pa. 475, 402 A.2d 1371

(1979)), but also appears to implement an entirely countervailing bright-line approach. The majority does so by effectively suggesting that the subject instance of assaultive behavior on Missero's part—because it reasonably can be couched as less severe than the conduct of the victim alleged by the defendant and since it occurred approximately eleven months after the prison incident—simply could not have been admitted into evidence within the trial court's discretionary purview, had discretion actually been exercised.[1] Thus, while the majority purports to afford wide latitude to the discretionary evidentiary decisions of the trial courts, I believe that the effect of its decision, in fact, is constrictive.

Rather than implementing a *de novo* appellate-level evidentiary ruling, I believe that an appropriate harmless-error analysis should center on whether the Commonwealth has demonstrated, beyond a reasonable doubt, that there is essentially no possibility that the evidence of Missero's assaultive behavior which was excluded by the trial court for an erroneous reason could have made a difference in terms of the outcome of Appellant's trial. *See generally Commonwealth v. Howard,* 538 Pa. 86, 100, 645 A.2d 1300, 1307 (1994) (setting forth the standard governing harmless-error review) (quoting *Commonwealth v. Story,* 476 Pa. 391, 409, 383 A.2d 155, 164 (1978)). In this regard, I tend toward the view of Judge Strassburger, expressed in his initial memorandum opinion, as follows:

Appellant and Missero were the only witnesses to testify at trial about who did what in Appellant's cell on June 8, 2009. Missero testified that Appellant ambushed him with the razor blade. Appellant testified that Missero initiated the fight by throwing coffee at him and coming after him with the razor blade. Clearly the evidence of Missero's assaultive character could persuade a jury to believe Appellant's

1. To the degree to which the majority opinion would allow that the trial court actually had discretion to permit the admission of the evidence of Missero's subsequent assaultive behavior, it would be necessary to apply a materially different approach to the question of harmlessness. *See infra.*

version of events. As such, we cannot deem this to be harmless error.

*Commonwealth v. Christine*, No. 1893 EDA 2011, *slip op.* at 10 (Pa.Super. Apr. 24, 2012) (withdrawn).

As to the admissibility of the shank found in Appellant's cell, I would forego addressing the issue, because I do not believe that the salient questions have been framed and presented adequately. With respect to the admissibility of other-weapons evidence, I find it important to distinguish between legal and *illegal* weapons, since the latter also comprises evidence of other bad acts subject to the restrictions on admissibility imposed under Pennsylvania Rule of Evidence 404(b). *See* Pa.R.E. 404(b)(1) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."). While this rule admits of exceptions, *see* Pa.R.E. 404(b)(2) ("This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."), such exceptions are subject to the following express and important caveat: "In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice." *Id.*

Accordingly, while I have little difficulty with the majority's assessment that the shank found under Appellant's bed can be deemed relevant under the minimal relevancy requirements set forth in our evidentiary rules, *see* Pa.R.E. 401 (providing that "[e]vidence is relevant if . . . it has any tendency to make a fact [of consequence in determining the action] more or less probable than it would be without the evidence"), I find it noteworthy that Appellant would have been entitled to a more discerning evaluation of probative value versus prejudice, had such question been raised and preserved.[2]

---

**2.** Relevant to such balancing, I have otherwise expressed my belief that "the presentation of other-weapons evidence is attended by a fairly high risk of undue prejudice, and, therefore, courts should refrain from sanctioning admission absent a strong and legitimate probative purpose justifying its introduction." *Commonwealth v. Hitcho*, 633 Pa. 51, 122, 123 A.3d 731, 773–74, 2015 WL 5691067, at *36 (2015) (Saylor, C.J.,

In this regard, I also observe that our written and common-law evidential rules protect against the use of evidence of specific conduct to prove propensity *against* a criminal defendant, *see* Pa.R.E. 404(b)(1), 405(b), while affording latitude to defendants to use specific-conduct evidence of a victim's propensity for violence in furtherance of self-defense claims. *See* Pa.R.E. 405(b)(2); *Commonwealth v. Mouzon*, 617 Pa. 527, 532, 53 A.3d 738, 741 (2012).[3] These principles are out of focus in the present case both since the trial court's decision was erroneous in several material respects, *see* Majority Opinion, at 400–02, 125 A.3d at 400–01, and because its effect was to allow for the admission of specific-conduct-type evidence against the defendant (his constructive possession of a shank) while excluding such evidence relevant to the victim (Missero's assault conviction). In the circumstances, I do not find the other-weapons aspect of the appeal to present a suitable context for adding clarity to the jurisprudence.

In summary, I would reverse the order of the Superior Court, since I agree with the majority that the trial court's actual evidentiary ruling concerning the admissibility of the victim's assault conviction was predicated on an erroneous rationale. Further, to the degree that the question of harmless error resides within the appropriate scope of this appeal, I conclude that the Commonwealth has not satisfied its burden in this regard.

concurring). Indeed, I believe that such prejudice is the reason underlying the general prohibition in the first instance.

3. Although there is a lack of parity in these principles as between the interests of criminal defendants and the Commonwealth, only the liberty (and, sometimes, the lives) of the former are at stake in criminal proceedings.

Parenthetically, the evidentiary rules do establish some degree of equilibrium when a defendant seeks to prove a character trait of an alleged victim by permitting the Commonwealth to introduce reputation evidence and engage in cross-examination relative to the same trait of the defendant. *See* Pa.R.E. 404(a)(2)(B)(ii), 405(a). The rules, however, simply do not operate in this fashion relative to evidence of specific instances of conduct. *See* Pa.R.E. 405(b).